**WO**

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: Zicam Cold Remedy Marketing, Sales Practices, and Products Liability Litigation.<br><br>THIS DOCUMENT RELATES TO:<br><br>All Economic Injury Actions. | No. 09-md-2096-PHX-FJM<br><br>**ORDER** |

The court has before it "Plaintiffs' Unopposed Motion to Dismiss Efficacy Claims" (doc. 998) and "Plaintiffs' Unopposed Motion for Certification and Final Approval of an Injunctive Relief Only Settlement Class Limited to the Intra-Nasal Products" (doc. 999). Because the motions and the proposed settlement agreement raise questions and leave several key issues unresolved, the parties shall file a supplemental memorandum, as outlined below.

**I**

We have described the economic injury actions as "all actions that seek certification of a Class of plaintiffs for economic losses associated with the purchase of Zicam products." Order of Feb. 26, 2010 (doc. 182). In the "First Amended Consolidated Economic Injury Class Action Complaint" (doc. 187), plaintiffs claim that the intra-nasal products are unsafe and ineffective, that defendants misrepresented the safety and efficacy of the products, and that plaintiffs based their decisions to purchase and use the products on defendants'

misrepresentations. Plaintiffs allege violations of the Arizona Consumer Fraud Act, A.R.S. § 14-1522, various states' consumer protection laws, and breach of express and implied warranties. Plaintiffs also assert claims for negligence and unjust enrichment. Defendants answered the consolidated complaint on April 22, 2010 (doc. 308).

Plaintiffs now seek to dismiss all so called efficacy claims asserted in the consolidated complaint, pursuant to Rule 41(a)(1)(A)(ii), Fed. R. Civ. P. The parties have agreed to a separate settlement of the efficacy claims as part of <u>Hohman v. Matrixx Initiatives, Inc.</u>, No. CV 09-3683, currently pending in the United States District Court for the Northern District of Illinois. The <u>Hohman</u> complaint alleges that the defendants marketed Zicam products deceptively because they lacked adequate scientific proof of the products' efficacy. The Judicial Panel on Multidistrict Litigation declined to transfer <u>Hohman</u> to this MDL, on the grounds that that action centers on the products' efficacy, and not whether the products cause anosmia. <u>Transfer Order</u> at 2 (doc. 1). According to plaintiffs, dismissing the efficacy claims currently before us preserves the separate treatment of the efficacy and safety claims. Plaintiffs assert that they will seek to amend the <u>Hohman</u> complaint to include a nationwide class, and that, if approved, the <u>Hohman</u> settlement will resolve all efficacy claims. If the settlement is not approved, the efficacy claims will be litigated in the <u>Hohman</u> action, and not as part of the MDL proceedings. As assurance, the plaintiffs assert that they will join as parties to the <u>Hohman</u> action, thereby preventing them from ever dismissing their claims in <u>Hohman</u> and refiling their efficacy claims in this court. <u>See</u> Fed. R. Civ. P. 41(a)(1)(B) (if "the plaintiff previously dismissed any federal-or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits"). They do not tell us whether the <u>Hohman</u> court will allow their joinder.

Plaintiffs also move for certification of a settlement class pursuant to Rule 23(b)(2), Fed. R. Civ. P., to resolve all claims for injunctive relief relating to the safety of the Zicam Cold Remedy Intra-Nasal Products. <u>Settlement Agreement</u>, ¶ 1.12. The proposed class is defined as "all persons in the United States who purchased Zicam Cold Remedy Nasal Spray, Zicam Cold Remedy Swabs, or Zicam Cold Remedy Swabs (kids size), for personal, family

- 2 -

1  or household use between January 1, 1999 through the Execution Date and claim the
2  products were not safe. Excluded from the Settlement Class are all persons who suffered
3  bodily injury arising from the use of these products." Settlement Agreement, ¶ 1.10.

4  Defendants agree to an injunction that any reintroduced intra-nasal products will
5  contain labels warning of adverse effects, as required by the United States Food and Drug
6  Administration ("FDA"). Settlement Agreement, ¶ 2.2. Defendants also agree to provide
7  to plaintiffs' co-lead class counsel the proposed labeling thirty days in advance, to ensure
8  defendants are in compliance with the agreed-upon labeling language. Settlement
9  Agreement, ¶ 2.3.

10 In exchange, plaintiffs agree to release defendants from all claims for injunctive relief
11 that are related to the safety claims. Settlement Agreement, ¶ 1.12. The release excludes
12 bodily injury and efficacy-based claims. Settlement Agreement, ¶ 3.1. Left unaddressed are
13 claims for damages related to the safety claims that are not also bodily injury claims.
14 Additionally, plaintiffs' counsel plans to submit an application for attorneys' fees and
15 expenses, not to exceed $150,000, which co-lead class counsel will allocate. Settlement
16 Agreement, ¶ 6.1.

**II**

18 Because the parties' settlement proposal would bind class members, we may only
19 approve it after a hearing and upon a finding that it is fair, reasonable, and adequate. Fed.
20 R. Civ. P. 23(e)(2). The purpose of this review "is to protect the unnamed members of the
21 class from unjust or unfair settlements affecting their rights." In re Syncor ERISA Litigation,
22 516 F.3d 1095, 1100 (9th Cir. 2008). In assessing the proposal, we balance: "the strength
23 of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation;
24 the risk of maintaining class action status throughout the trial; the amount offered in
25 settlement; the extent of discovery completed and the stage of the proceedings; the
26 experience and views of counsel; the presence of a governmental participant; and the reaction
27 of the class members to the proposed settlement." Hanlon v. Chrysler Corp., 150 F.3d 1011,
28 1026 (9th Cir. 1998).

The plaintiffs explain that the proposed settlement is the product of five mediation sessions with Magistrate Judge David K. Duncan. They further claim it is reasonable and within the range of possible approval because it addresses defendants' allegedly deceptive practices and provides injunctive relief, should the intra-nasal products be reintroduced.

### III

The plaintiffs have the burden of showing that the proposed class meets the four requirements of Rule 23(a), Fed. R. Civ. P., and at least one requirement of Rule 23(b), Fed. R. Civ. P. See Dukes v. Wal-Mart Stores, Inc., ("Dukes II") 603 F.3d 571, 580 (9th Cir. 2010). The requirements of Rule 23(a) are: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy. Id. at 599. Plaintiffs allege their class may be certified pursuant to the second requirement of Rule 23(b), which permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). It is sufficient "to meet the requirements of Rule 23(b)(2) that class members complain of a pattern or practice that is generally applicable to the class as a whole." Rodriguez v. Hayes, 591 F.3d 1105, 1125 (9th Cir. 2010). To be certified as a Rule 23(b)(2) class, plaintiffs must show that: (1) even in the absence of possible monetary recovery, reasonable plaintiffs would bring the action to obtain the injunctive relief sought; and (2) the injunctive relief would be both reasonably necessary and appropriate were the plaintiffs to succeed on the merits. Dukes v. Wal-Mart, Inc., ("Dukes I") 509 F.3d 1168, 1186 (9th Cir. 2007). Additionally, we have discretion to direct notice to members of a Rule 23(b)(2) class. See Fed. R. Civ. P. 23(c)(2)(A). Plaintiffs urge us not to mandate notice to the class.

### IV

Because plaintiffs' motion does not address several important questions about the proposed settlement, we cannot yet schedule a hearing on whether the proposed settlement is fair, reasonable, and adequate. Accordingly, the parties shall submit a supplemental memorandum addressing the following concerns.

1   First, the motion to certify the class is untimely. Our Rule 16 Scheduling Order set
2  a deadline of August 16, 2010 for class certification motions (doc. 183). Plaintiffs' motion
3  was filed on October 19, 2010, without any attempt to explain the two month delay.
4  Plaintiffs' reasons may include the parties' earlier request to dismiss the economic injury
5  claims in order to resolve them as part of Hohman, which we denied (doc. 774).
6  Nonetheless, we cannot accept the parties' noncompliance with our scheduling order without
7  a showing of good cause.

8   Second, we do not understand how the proposed settlement resolves safety-related
9  claims for monetary damages. The plaintiffs' amended complaint asserts claims based on
10 safety and efficacy. Plaintiffs prayed for both injunctive relief and "damages in the amount
11 of monies paid for defendants' offending Zicam products and/or other consequential or
12 incidental damages," as well as "actual damages, statutory damages, punitive or treble
13 damages, and such relief as provided by the statutes cited herein." Consolidated Complaint
14 at 39. Plaintiffs now seek to dismiss all efficacy claims, so that they may be resolved through
15 the Hohman action. This apparently leaves all safety-based claims for both injunctive and
16 monetary relief before this court. However, plaintiffs define the released claims as only
17 claims for *injunctive relief* relating to the safety of the products. Settlement Agreement, ¶
18 1.12. Therefore, we read the proposed settlement as resolving safety-related claims for
19 injunctive relief, but not as resolving safety-based claims for monetary damages.

20  The proposed class includes "all persons in the United States who purchased [the
21 intra-nasal products]" during the specified period and claim the products are unsafe. Thus,
22 there appears to be incongruity between the definition of the proposed class (all persons who
23 bought the products and claim they are unsafe) and the claims that plaintiffs wish to release
24 (all safety claims for injunctive relief only). Plaintiffs should explain how the proposed
25 settlement affects safety-based claims for monetary damages, as asserted in their consolidated
26 complaint. Or, are the parties asserting that there are no safety related claims for damages
27 that are not also excluded as bodily injury claims?

28  Third, the proposed injunctive relief appears to be a simple affirmation that defendants

will do what the FDA requires of them. Plaintiffs claim that the settlement agreement is the product of arms-length negotiations, but the labeling does not seem to constitute a significant concession on the part of the defendants. Moreover, it is unclear what the plaintiffs, who have already purchased the products, gain from this agreement. Plaintiffs should explain how this labeling requirement provides them with meaningful relief.

Finally, the parties assert that the efficacy claims will be resolved in the <u>Hohman</u> settlement, and if the settlement is not approved, the efficacy claims dismissed without prejudice here would be litigated in <u>Hohman</u>. How do the parties know the <u>Hohman</u> court will allow joinder of the dismissed efficacy claims?

**V**

**IT IS ORDERED** that the parties shall submit a supplemental memorandum answering the questions raised in this order. The memorandum must be filed by lead counsel. The memorandum may not exceed ten pages, and must be filed within ten days of the docketing of this order.

DATED this 2nd day of November, 2010.

*Frederick J. Martone*
Frederick J. Martone
United States District Judge